J-S65023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH EDWARD GLOWANIA, | |
| Appellant | No. 2901 EDA 2014 |

Appeal from the Judgment of Sentence September 25, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0002244-2014

BEFORE:  BENDER, P.J.E., SHOGAN, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:　　　　　　**FILED DECEMBER 14, 2015**

Appellant, Kenneth Edward Glowania, appeals from the judgment of sentence entered following his convictions by a jury of two counts of aggravated assault (causing serious bodily injury and causing serious bodily injury with a deadly weapon), simple assault, recklessly endangering another person, and disorderly conduct.  Appellant was found not guilty of possession of an instrument of a crime.  We affirm.

The trial court summarized the facts, viewed favorably to the Commonwealth, as follows:

> [T]he evidence established that on March 1, 2014, the victim, Michael Gordon, went to a local bar located in Bensalem Township, Bucks County.  While he was there, he met a childhood friend, Jilian Scheffer.  The victim and Ms. Scheffer left the bar at approximately 2:00 a.m. and, after a few minutes, decided to walk home. Shortly after they began walking, they heard yelling from behind.  When the victim stopped and looked

back, he was confronted by [Appellant].[3]  The victim testified that he heard [Appellant] yell "something to the effect of, 'yo, he just hit her, let's roll this dude, let's get him, let's jump him.'" The victim told [Appellant] to "get out of here" and told [Appellant] that he "didn't touch her."[4]  When the victim turned away and continued to walk home with Ms. Scheffer, he was attacked from behind by [Appellant].

[3] The victim did not know [Appellant] prior to this incident.

[4] The victim and Ms. Scheffer both testified that the victim did not strike Ms. Scheffer or Alicia Denofa, the friend who was with Ms. Scheffer and the victim that night.

[Appellant] used his left arm to restrain the victim from behind. He reached over the victim's right shoulder with his right arm, moving his right hand across the victim's neck.  In response to the attack, the victim lowered his head.  By doing so, the victim was able to protect his neck but was unable to protect his face.  [Appellant] cut the victim with an unidentified sharp object, inflicting a slicing wound which extended from the victim's cheek, up and over his forehead, to the crown of his head. [Appellant] also cut the victim's left upper chest.  When the victim was able to break free, he turned towards [Appellant] and began to back away.  [Appellant], still armed with the unidentified object, continued his assault, making stabbing motions toward the victim.  The victim was able to use a cell phone to call 911, ending the incident.

When police arrived on scene, the victim was bleeding profusely and had lost a substantial amount of blood. Photographs taken at the scene depicted a large amount of blood on the street where the incident occurred.  Photographs of the victim and his clothing depicted large amounts of blood on the victim's face, hands and down the front of his t-shirt and pants. The victim was transported from the scene by ambulance. Photographs of the victim's injuries taken at the hospital depicted two severe injuries to the victim.  The deep slicing cut to the victim's head ran very close to the victim's right eye, required numerous stiches to close and resulted in permanent scarring.  The deep slicing cut to the victim's upper left chest also left scarring.  Both injuries were clearly caused by a very sharp cutting instrument.

Trial Court Opinion, 2/25/15, at 2–4 (record references and some footnotes omitted).

On August 28, 2014, Appellant was sentenced to a term of incarceration of ten to twenty years for aggravated assault—causing serious bodily injury. No further penalty was imposed on the remaining counts. On September 25, 2014, following Appellant's motion for reconsideration of sentence, Appellant was resentenced to a reduced term of incarceration of eight and one-half to twenty years. This appeal followed.

Appellant presents the following issues for review:

A. WHETHER THE EVIDENCE WAS SUFFICIENT TO ESTABLISH AGGRAVATED ASSAULT BEYOND A REASONABLE DOUBT?

B. WHETHER THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH SIMPLE ASSAULT BEYOND A REASONABLE DOUBT?

C. WHETHER THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH RECKLESSLY ENDANGERING ANOTHER PERSON BEYOND A REASONABLE DOUBT?

D. WHETHER THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH DISORDERLY CONDUCT BEYOND A REASONABLE DOUBT?

E. WHETHER THE TRIAL COURT ERRED IN GRANTING THE COMMONWEALTH'S MOTION TO PRECLUDE EVIDENCE OF THE ALLEGED VICTIM'S DRUG USAGE AND ITS IMPACT ON HIS ABILITY TO RECALL, OBSERVE, AND OTHERWISE RELATE ACCURATELY THE EVENTS OF THE ALLEGED INCIDENT?

Appellant's Brief at 4–5 (verbatim).

We first consider Appellant's claim regarding the sufficiency of the evidence supporting his convictions (Issues A–D). When examining a challenge to the sufficiency of the evidence:

[t]he standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 872–873 (Pa. Super. 2011) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)). This standard is similarly applicable in cases where the evidence is circumstantial rather than direct, "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003)).

Pa.R.A.P. 1925(b) requires an appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Allshouse*, 969 A.2d

1236, 1239 (Pa. Super. 2009) (quotation omitted) ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.").

Pertinent to the sufficiency of the evidence raised herein, this Court has stated that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). We further explained that "[s]uch specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* at 344. Failure to identify what specific elements the Commonwealth failed to prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency of the evidence claim waived for appellate review. *Id.*

Here, Appellant has challenged his convictions of five different crimes. Appellant's 1925(b) statement questioned whether the Commonwealth put forth sufficient proof to support these convictions, but it failed to state explicitly any particular elements of the crimes the Commonwealth failed to prove. Accordingly, Appellant's sufficiency claims raised in Issues A—D are waived. We so conclude despite the fact that the trial court addressed the

sufficiency claims. ***See Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008) ("the presence of a trial court opinion [is] of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on . . . a trial court's choice to address an unpreserved claim.").

Furthermore, even if not waived, Appellant's sufficiency claims would afford him no relief. To the extent that Appellant asserts that the Commonwealth failed to prove the elements of two separate aggravated assault offenses, simple assault, reckless endangerment, and disorderly conduct, we conclude that the trial court has thoroughly and correctly addressed these arguments and we would adopt this sound reasoning for purposes of this appeal. ***See*** Trial Court Opinion, 2/25/15, at 4–7.

Appellant additionally contends that there was insufficient evidence to overcome his claims of self-defense and defense of others, the Commonwealth's evidence was unreliable and inconsistent, and the jury's not guilty verdict for possession of an instrument of a crime establishes that the victim's account of the incident was not credible. Again, we confront a waiver issue.

In his Rule 1925(b) statement, Appellant's arguments detailed in the preceding paragraph were raised as weight of the evidence challenges. ***See*** Appellant's Amended 1925(b) Statement, 2/6/15, at unnumbered 2. The trial court decided that these claims were waived because Appellant "failed

to raise a challenge to the weight of the evidence as required under [Pa.R.Crim.P.] 607(A)." Trial Court Opinion, 2/25/15, at 7.[1] Appellant acknowledged that he failed to raise the weight of the evidence argument before the trial judge. Appellant's Brief at 6.

In his brief, Appellant attempts to restyle his weight of the evidence claims as contesting the sufficiency of the evidence. His efforts in this regard are futile. First, Appellant's assaults on the consistency and credibility of the Commonwealth's witness are unequivocally weight of the evidence challenges. *See Commonwealth v. Fletcher*, 861 A.2d 898, 911–912 (Pa. 2004) (inconsistencies in the witness's testimony went to the weight to be accorded such evidence); *see also Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013) (attack on credibility of the witness's testimony does not question the sufficiency of the evidence; rather

_____

[1] Rule 607 provides:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

The *Comment* to Rule 607 informs that the rule's purpose is to make clear that a weight of the evidence challenge will be waived if it is not presented to the trial judge.

it implicates an allegation regarding the weight it should have been afforded). Accordingly, Appellant's failure to present these arguments concerning witness credibility to the trial court in accordance with Pa.R.Crim.P. 607(A) precludes appellate review.

Next, Appellant's assertion that the Commonwealth failed to disprove that he acted in self-defense and in defense of others could potentially invoke a sufficiency of the evidence inquiry, if properly raised. When a defendant presents evidence of self-defense, "the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt. Although the Commonwealth is required to disprove a claim of self-defense . . . a jury is not required to believe the testimony of the defendant who raises the claim." **Commonwealth v. Chine**, 40 A.3d 1239, 1243 (Pa. Super. 2012) (quoting **Commonwealth v. Houser,** 18 A.3d 1128, 1135 (Pa. 2011)).

Appellant's Rule 1925(b) statement did not include a contest to the sufficiency of the evidence to disprove his claims of self-defense or defense of others. Accordingly, his arguments in this regard are waived. **See Garland**, 63 A.3d at 344 (Rule 1925(b) statement must specifically state the elements upon which the appellant alleges that the evidence was insufficient).

Appellant's final issue is whether the trial court erred in precluding cross-examination of the victim's alcohol and drug usage and its impact on

the victim's ability to accurately recall the details of the incident. "A trial court has discretion to determine both the scope and the permissible limits of cross-examination and the 'trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law.'" ***Commonwealth v. Briggs***, 12 A.3d 291, 335 (Pa. 2011) (quoting ***Commonwealth v. Birch***, 616 A.2d 977, 978 (Pa. 1992)).

Here, the Commonwealth filed a motion *in limine* to preclude evidence of the victim's use of a controlled substance on the date of the offense.[2] At the hearing on the motion, Appellant posited that the victim's medical record from his hospitalization following the subject incident listing methadone as a current medication was admissible because that information was inconsistent with the victim's statement to the police and with his testimony at the preliminary hearing. Appellant also urged that the victim's use of methadone was relevant to his ability to recall the details of the offenses charged.

_____

[2] When it prepared its motion, the Commonwealth was anticipating that Appellant planned to introduce evidence showing that the victim's blood tested positive for controlled substances and specifically sought to preclude evidence of the blood test. However, it was revealed at the hearing on the motion that the victim's blood was not drug-tested and that the only medical evidence of his drug usage was a notation in the victim's medical history that methadone was a current medication. N.T. (Motion *in Limine*), 8/18/14, at 23.

The trial court thoughtfully explained its rationale for precluding the evidence as follows:

[T]he defense argued that the victim lied to police and lied at the preliminary hearing when he stated that he was not on any drugs. Prior to trial, the only evidence that the victim may have used methadone on the date of the offense was the isolated reference to medications in the medical records. There was no evidence that the victim ingested any medication on the date of the offense. This Court ruled that the defense would be permitted to cross-examine the victim as to whether or not he had taken any medication during the relevant timeframe, whether that medication, alone or in combination with alcohol, had any impact on him. This Court also ruled that, if the victim's answers were inconsistent with his prior statements to police or with his preliminary hearing testimony, he could be impeached with those statements. This Court further ruled that if the victim denied drug use, defense counsel could confront him with the medical records. This Court precluded any reference to "methadone" for purposes of any prior inconsistent statements, finding that the specific type of medication was irrelevant to whether the victim had or had not lied regarding drug/medication use.

On cross-examination . . . the victim testified as follows:

Q. Okay. Were you on any medications that evening?

A. No. Prescribed medications?

Q. Prescribed medications.

A. Yes.

\* \* \*

Q. Did the prescribed medications impair your ability

to remember things that evening?

A. No.

\* \* \*

- 10 -

Q. What about non-prescribed medications?

A. I wasn't on any non-prescribed medications.

Q. Okay. The prescribed medications, do you take them daily?

A. Yes.

Q. Okay. And did you take them that day?

A. Yes.

Following this exchange, counsel for [Appellant] asked permission to use the victim's medical records alleging that his testimony at trial was inconsistent with his testimony at the preliminary hearing. This Court asked for the precise question and answer and was informed that the question was: "Had you consumed any other substance that would affect your ability to remember or see what occurred?" The victim responded: "Not at all." At trial the victim testified that he took medication that day but that the medication did not impair his ability to remember. That testimony is consistent with his preliminary hearing testimony that he did not consume any other substance that would affect his ability to remember or to see what occurred. This Court ruled that the victim's testimony at trial was not inconsistent with his preliminary hearing answer and, therefore, properly precluded use of the medical records regarding methadone medication.

[Appellant] also argued that the victim's use of methadone was admissible for purposes of challenging the victim's ability to observe, recall and relate the events that occurred on the night of the stabbing and for purposes of proving that his use of methadone had some unidentified impact on his behavior that night. This Court ruled that evidence of drug use was admissible for the purposes proposed by the defense but precluded any reference to methadone use without a proper foundation, specifically admissible evidence that methadone impairs cognitive functioning and/or effects behavior.

The law applicable to this issue is well settled. A witness is subject to cross–examination exploring his or her ability to observe and accurately recall the event in question. Commonwealth v. Johnson, 291 Pa.Super. 566, 436 A.2d 645

- 11 -

(1981). Alcohol and or drug use by the witness is also relevant if the witness was *under the influence* at the time of the occurrence to which the testimony is offered. Commonwealth v. Small, 559 Pa. 423, 741 A.2d 666 (1999) (emphasis added). A witness cannot be impeached with evidence of alcohol or drug use unless it is shown that the drugs affect the reliability of the witness's testimony. In the Interest of M.M., 547 Pa. 237, 690 A.2d 175 (1997).

In the instant case, [Appellant] failed to establish the necessary evidentiary foundation for the admission of evidence concerning the victim's use of methadone. [Appellant] proffered no admissible evidence as to the effect of methadone on a person's mental functioning and/or behavior.[20] In response to this Court's inquiries, defense counsel informed this Court that he had no expert testimony or other competent evidence to establish that the victim's alleged use of methadone, taken alone or in conjunction with alcohol, would have any impact upon his ability to perceive, recall or relate the events or would in any way affect his behavior. Based on the lack of evidentiary foundation, this Court ruled that the inquiry was not shown to be relevant to the witness's credibility or his conduct. This Court properly concluded that references to "methadone," undefined and unexplained, would have permitted the jury to engage in improper and impermissible speculation.

> [20] Counsel relied on information that appeared on the website "Drugs.com." The information downloaded from that website is inadmissible hearsay. See Pa.R.E., Rule 803 (18) (providing that "Pennsylvania does not recognize an exception to the hearsay rule for learned treatises."); Aldridge v. Edmunds, 561 Pa. 323, 331-32, 750 A.2d 292, 296-97 (2000); Majdic v. Cincinnati Machine Co., 370 Pa. Super. 611, 537 A.2d 334 (1988).

Trial Court Opinion, 2/25/15, at 7–10 (record references omitted).

In his brief, Appellant avers that the trial court's limit on the permissible scope of the victim's cross-examination is violative of the precept that evidence that may undermine the Commonwealth's case is material and relevant in a criminal case. Appellant contends that probative

balancing of such evidence strongly favors admission because the prejudice factor concerns prejudice to the defendant. *See Commonwealth v. Thompson*, 779 A.2d 1195, 1203 (Pa. Super. 2001) ("Pa.R.E. 402(b) appears to be concerned only with prejudice to the defendant.").

Appellant, however, does not cite any error in the trial court's two-fold rationale for limiting the victim's cross-examination, *i.e.*, the victim's testimony at trial was consistent with his preliminary hearing testimony and Appellant's inability to establish the necessary foundation for the admission of evidence concerning the victim's use of methadone. Appellant's contention that the probative value of the victim's methadone use demanded its admission is based rather upon general principles regarding criminal defense evidence and overlooks the specific legal authority concerning evidence of a witness's drug and alcohol use. While "intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration," *see Commonwealth v. Small,* 741 A.2d 666, 677 (Pa. 1999) (quotation omitted), "there must be, at a minimum, some factual basis upon which to conclude or to suspect that the witness was intoxicated before questions regarding alcohol consumption are permissible." *In the Interest of M.M.,* 690 A.2d 175, 178 (Pa. 1997) ("While evidence of intoxication may be admissible to challenge a witness' ability to perceive the events to which he is testifying, evidence that the witness was simply drinking prior to the observations is not.").

Here, Appellant did not establish a sufficient factual basis that would allow him to pursue his desired line of questioning of whether the victim's methadone use affected his ability to testify credibly as to the events in question. At the hearing on the motion *in limine*, Appellant was given an opportunity to lay a proper foundation for the evidence of the victim's methadone use which he intended to elicit during cross examination. Appellant could not provide any specific level of methadone in the victim's system at the time of the incident and referred only to the victim's medical records which listed methadone as one of his current medications. The only evidence proffered as to the effect of methadone on a person's ability to recall or perceive events, or to the consequences of methadone's interaction with alcohol was information downloaded from the Drugs.com website.

As no foundation was laid as to the amount of methadone in the victim at the time of the assault, the trial court did not abuse its discretion in precluding cross-examination of the victim's use of the drug during the relevant timeframe. Additionally, "[n]either this Court nor our Supreme Court has taken judicial notice of information appearing on a website." *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 393 n.6 (Pa. Super. 2015); *Commonwealth v. Brown*, 839 A.2d 433, 435–437 (Pa. Super. 2003) (finding no abuse of discretion in the trial court's refusal to take judicial notice of the distance between two points as stated on the mapquest

website).  As we find no abuse of discretion, we will not disturb the court's decision to limit the cross-examination of the victim.

We conclude that Appellant has waived review of his sufficiency of the evidence claims and has failed to establish that the trial court abused its discretion in its evidentiary rulings.  For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2015

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :   No.   CP-09-CR-0002244-2014

v.   :   [2901 EDA 2014]

KENNETH EDWARD GLOWANIA   :

## OPINION

The Defendant appeals from the judgment of sentence entered on September 25, 2014.

On August 20, 2014, following a trial by jury, the Defendant was found guilty of aggravated assault – causing serious bodily injury and aggravated assault – attempting to cause serious bodily injury, in violation of 18 Pa.C.S. § 2702(a)(1); aggravated assault – causing bodily injury with a deadly weapon and aggravated assault – attempting to cause bodily injury with a deadly weapon, in violation of 18 Pa.C.S. § 2702(a)(4); simple assault – causing bodily injury and simple assault – attempting to cause bodily injury, in violation of 18 Pa.C.S. § 2701(a)(1); recklessly endangering another person, in violation of 18 Pa. C.S. § 2705; and disorderly conduct, in violation of 18 Pa.C.S. § 5503(a)(1). The Defendant was found not guilty of possessing instruments of a crime, 18 Pa.C.S. § 907(a).

On August 28, 2014, the Defendant was sentenced to a term of incarceration of ten to twenty years for aggravated assault – causing serious bodily injury. No further penalty was imposed on the remaining counts. On September 25, 2014, following a motion for reconsideration of sentence, the Defendant was resentenced to a term of incarceration of eight and one-half to twenty years.

In his Statement of Matters Complained of on Appeal, the Defendant challenges the sufficiency of each of his convictions.[1] When examining the sufficiency of evidence,

> [t]he standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Houck, 102 A.3d 443, 449 (Pa.Super.2014) (quoting Commonwealth v. Barnswell Jones, 874 A.2d 108, 120–21 (Pa.Super.2005)).

Viewed in the light most favorable to the Commonwealth, the evidence established that on March 1, 2014, the victim, Michael Gordon, went to a local bar located in Bensalem Township, Bucks County. While he was there, he met a childhood friend, Jilian Scheffer. The victim and Ms. Scheffer left the bar at approximately 2:00 a.m. and, after a few minutes, decided to walk home.[2] Shortly after they began walking, they heard yelling from behind. When the victim stopped and looked back, he was confronted by the Defendant.[3] The victim testified that he heard the Defendant yell "something to the effect of, 'yo, he just hit her, let's roll this dude, let's get him, let's jump him.'" The victim told the Defendant to "get out of here" and told the

---

[1] Amended Statement of Matters Complained of on Appeal, ¶¶ 1-5.
[2] N.T. 8/19/14 pp. 12, 52-53.
[3] The victim did not know the Defendant prior to this incident. N.T. 8/19/14 p. 58.

2

Defendant that he "didn't touch her."[4] When the victim turned away and continued to walk home with Ms. Scheffer, he was attacked from behind by the Defendant.

The Defendant used his left arm to restrain the victim from behind. He reached over the victim's right shoulder with his right arm, moving his right hand across the victim's neck. In response to the attack, the victim lowered his head. By doing so, the victim was able to protect his neck but was unable to protect his face. The Defendant cut the victim with an unidentified sharp object,[5] inflicting a slicing wound which extended from the victim's cheek, up and over his forehead, to the crown of his head. The Defendant also cut the victim's left upper chest. When the victim was able to break free, he turned towards the Defendant and began to back away. The Defendant, still armed with the unidentified object, continued his assault, making stabbing motions toward the victim. The victim was able to use a cell phone to call 911, ending the incident.[6]

When police arrived on scene, the victim was bleeding profusely and had lost a substantial amount of blood.[7] Photographs taken at the scene depicted a large amount of blood on the street where the incident occurred. Photographs of the victim and his clothing depicted large amounts of blood on the victim's face, hands and down the front of his t-shirt and pants.[8] The victim was transported from the scene by ambulance.[9] Photographs of the victim's injuries taken at the hospital depicted two severe injuries to the victim. The deep slicing cut to the victim's head ran very close to the victim's right eye, required numerous stiches to close and

---

[4] The victim and Ms. Scheffer both testified that the victim did not strike Ms. Scheffer or Alicia Denofa, the friend who was with Ms. Scheffer and the victim that night. N.T. 8/19/14 pp. 19, 123, 125.
[5] Both the victim and Ms. Scheffer testified that the Defendant had something in his hand during the assault, but neither could identify the object. N.T. 8/19/14 pp. 20, 63.
[6] N.T. 8/18/14 pp. 60-65.
[7] N.T. 8/20/14 pp 29.
[8] Exhibits C-7, C-8, C-9.
[9] N.T. 8/19/14 p. 76; 8/20/14 p. 30.

3

resulted in permanent scarring.[10] The deep slicing cut to the victim's upper left chest also left scarring.[11] Both injuries were clearly caused by a very sharp cutting instrument.

The jury convicted the Defendant of aggravated assault in violation of section 2702(a)(1) which provides that a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. A person intentionally causes serious bodily injury where "it is his conscious object ... to cause such a result." 18 Pa.C.S. § 302(b)(1)(i). A person knowingly causes serious bodily injury when "he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S. § 302(b)(2)(ii). A person recklessly causes serious bodily injury when "he consciously disregards a substantial and unjustifiable risk that ... [serious bodily injury] will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(3). A person attempts to cause serious bodily injury when, with the required specific intent, he commits any act which constitutes a substantial step toward inflicting serious bodily injury upon another person. Commonwealth v. Gruff, 822 A.2d 773, 776 (Pa.Super.2003).

The jury also convicted the Defendant of aggravated assault in violation of section 2702(a)(4) which provides that a person is guilty of aggravated assault if he "attempts to cause or

---

[10] N.T. 8/19/14 pp. 83-84; Exhibits C-4, C-6.
[11] N.T. 8/19/14 pp. 83-84; Exhibit C-5.

4

intentionally or knowingly causes bodily injury to another with a deadly weapon." "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "Deadly weapon" is defined, in pertinent part, as "any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." Id.

The evidence introduced at trial established that the Defendant attacked the victim from behind and inflicted serious injury to the victim's head and chest with a cutting instrument. The Defendant caused the victim to suffer "serious, permanent disfigurement," i.e. permanent scarring to his face. The Defendant's use of a cutting instrument in the area of the victim's head neck and chest, created a substantial risk of death. The jury therefore properly found that the Defendant caused serious bodily injury to the victim. The evidence was also sufficient for the jury to find that the Defendant attempted to cause serious bodily injury. The Defendant's use of a cutting instrument in the area of the victim's head, neck and chest was "calculated to or likely to produce death or serious bodily injury," making that instrument a "deadly weapon." It is well settled that a specific intent to cause serious bodily injury, as required to support an aggravated assault conviction, can be inferred from the use of a deadly weapon on a vital part of the body. Commonwealth v. Nichols, 692 A.2d 181 (Pa.Super.1997). The evidence was, therefore, sufficient to sustain the Defendant's aggravated assault conviction pursuant to section 2702(a)(1) of the aggravated assault statute. This same evidence is sufficient to establish that the Defendant attempted to cause or intentionally or knowingly caused bodily injury to the victim with a deadly weapon. The jury therefore properly found the Defendant guilty of violating section 2702(a)(4) of the aggravated assault statute as well.

5

The jury convicted the Defendant of simple assault, both attempting to cause and causing bodily injury in violation of 18 Pa.C.S. § 2701(a)(1). This provision of simple assault is a lesser included offense of section 2702(a)(1) of the aggravated assault statute, attempting to cause serious bodily injury and intentionally, knowingly or recklessly causing serious bodily injury. See Commonwealth v. Sirianni, 286 Pa. Super. 176, 182, 428 A.2d 629, 632-33 (1981); Commonwealth v. Wilks, 250 Pa. Super. 182, 378 A.2d 887 (1977). The Defendant's simple assault conviction is supported by the same facts which support his conviction for aggravated assault. Having determined the evidence was sufficient to sustain the elements for aggravated assault, it follows that the evidence is also sufficient to sustain a conviction for simple assault.

The jury convicted the Defendant of recklessly endangering another person. That crime is committed if a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Recklessly endangering another person is a lesser included offense of aggravated assault. Where the evidence is sufficient to support a claim of aggravated assault, it is also sufficient to support a claim of recklessly endangering another person. Commonwealth v. Smith, 956 A.2d 1029 (Pa.Super.2008).

Finally, the Defendant was convicted of disorderly conduct. That crime is committed "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [a person]: (1) engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1). The offense is graded as a misdemeanor of the third degree if the Defendant intended to cause "substantial harm or serious inconvenience" or if he "persist[ed] in disorderly conduct after reasonable warning or request to desist." 18 Pa.C.S. § 5503(b). The

6

Defendant's violent attack of the victim in public, on a residential street, after being told by the victim to desist is clearly sufficient to support a conviction for disorderly conduct.

The Defendant next asserts that each of his convictions is against the weight of the evidence.[12] Rule 607 of the Pennsylvania Rules of Criminal Procedure provides:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>   (1) orally, on the record, at any time before sentencing;
>   (2) by written motion at any time before sentencing; or
>   (3) in a post-sentence motion.

"The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.CrimP. Rule 607 (official comment). The Defendant failed to raise a challenge to the weight of the evidence as required under Rule 607(A). His claims as to the weight of the evidence are therefore waived.

The Defendant next alleges that this Court erred in granting the Commonwealth's motion *in limine* to preclude evidence regarding the victim's use of methadone.[13] The issue revolved around the following reference in the victim's medical records: "Current medications, methadone."[14] The defense argued that this portion of the victim's medical records was admissible for two purposes. First, the defense argued that the information in the medical records was inconsistent with what the victim had told police and with his testimony at the preliminary hearing. Specifically, the defense argued that the victim lied to police and lied at the preliminary hearing when he stated that he was not on any drugs.[15] Prior to trial, the only evidence that the victim may have used methadone on the date of the offense was the isolated reference to medications in the medical records. There was no evidence that the victim ingested

---

[12] Amended Statement of Matters Complained of On Appeal, ¶¶ 6-10.
[13] Amended Statement of Matters Complained of On Appeal, ¶ 11.
[14] N.T. 8/18/14 p. 23.
[15] N.T. 8/18/14 p. 17.

7

any medication on the date of the offense. This Court ruled that the defense would be permitted to cross-examine the victim as to whether or not he had taken any medication during the relevant timeframe, whether that medication, alone or in combination with alcohol, had any impact on him.[16] This Court also ruled that, if the victim's answers were inconsistent with his prior statements to police or with his preliminary hearing testimony, he could be impeached with those statements.[17] This Court further ruled that if the victim denied drug use, defense counsel could confront him with the medical records. This Court precluded any reference to "methadone" for purposes of any prior inconsistent statements, finding that the specific type of medication was irrelevant to whether the victim had or had not lied regarding drug/medication use.

On cross-examination of the victim testified as follows:

Q. Okay. Were you on any medications that evening?
A. No. Prescribed medications?
Q. Prescribed medications.
A. Yes.

\*\*\*

Q. Did the prescribed medications impair your ability to remember things that evening?
A. No.

\*\*\*

Q. What about non-prescribed medications?
A. I wasn't on any non-prescribed medications.
Q. Okay. The prescribed medications, do you take them daily?
A. Yes.
Q. Okay. And did you take them that day?
A. Yes.[18]

Following this exchange, counsel for the Defendant asked permission to use the victim's medical records alleging that his testimony at trial was inconsistent with his testimony at the preliminary hearing. This Court asked for the precise question and answer and was informed

---

[16] N.T. 8/18/14 pp. 25-26.
[17] N.T. 8/18/14 pp. 28-29.
[18] N.T. 8/19/14 pp. 90-91.

8

that the question was: "Had you consumed any other substance that would affect your ability to remember or see what occurred?" The victim responded: "Not at all."[19] At trial the victim testified that he took medication that day but that the medication did not impair his ability to remember. That testimony is consistent with his preliminary hearing testimony that he did not consume any other substance that would affect his ability to remember or to see what occurred. This Court ruled that the victim's testimony at trial was not inconsistent with his preliminary hearing answer and, therefore, properly precluded use of the medical records regarding methadone medication.

The defense also argued that the victim's use of methadone was admissible for purposes of challenging the victim's ability to observe, recall and relate the events that occurred on the night of the stabbing and for purposes of proving that his use of methadone had some unidentified impact on his behavior that night. This Court ruled that evidence of drug use was admissible for the purposes proposed by the defense but precluded any reference to methadone use without a proper foundation, specifically admissible evidence that methadone impairs cognitive functioning and/or effects behavior.

The law applicable to this issue is well settled. A witness is subject to cross-examination exploring his or her ability to observe and accurately recall the event in question. Commonwealth v. Johnson, 291 Pa.Super. 566, 436 A.2d 645 (1981). Alcohol and or drug use by the witness is also relevant if the witness was *under the influence* at the time of the occurrence to which the testimony is offered. Commonwealth v. Small, 559 Pa. 423, 741 A.2d 666 (1999) (emphasis added). A witness cannot be impeached with evidence of alcohol or drug use unless it is shown that the drugs affect the reliability of the witness's testimony. In the Interest of M.M., 547 Pa. 237, 690 A.2d 175 (1997).

---

[19] N.T. 8/19/14 pp. 92-93.

9

In the instant case, the Defendant failed to establish the necessary evidentiary foundation for the admission of evidence concerning the victim's use of methadone. The defense proffered no admissible evidence as to the effect of methadone on a person's mental functioning and/or behavior.[20] In response to this Court's inquiries, defense counsel informed this Court that he had no expert testimony or other competent evidence to establish that the victim's alleged use of methadone, taken alone or in conjunction with alcohol, would have any impact upon his ability to perceive, recall or relate the events or would in any way affect his behavior. Based on the lack of evidentiary foundation, this Court ruled that the inquiry was not shown to be relevant to the witness's credibility or his conduct. This Court properly concluded that references to "methadone," undefined and unexplained, would have permitted the jury to engage in improper and impermissible speculation.

Finally, the Defendant contends that this Court erred by considering the deadly weapon enhancement during sentencing because he was found not guilty of possessing an instrument of crime.[21] The fact that the jury acquitted the Defendant of possession of an instrument of a crime does not prevent application of the deadly weapon enhancement. Commonwealth v. Johnakin, 502 A.2d 620, 622-623 (Pa.Super.1985).

> The [deadly weapon enhancement] provision applies whenever the court determines that the defendant possessed a deadly weapon, which for the purposes of the provision is any "device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301. . . . The fact that appellee was acquitted on the charge of possession of an instrument of crime does not alter this determination. The definitions of "instrument of crime" and "weapon" under the

---

[20] Counsel relied on information that appeared on the website "Drugs.com." N.T. 8/18/14 p. 21. The information downloaded from that website is inadmissible hearsay. See Pa.R.E., Rule 803(18) (providing that "Pennsylvania does not recognize an exception to the hearsay rule for learned treatises."); Aldridge v. Edmunds, 561 Pa. 323, 331-32, 750 A.2d 292, 296-97 (2000); Majdic v. Cincinnati Machine Co., 370 Pa. Super. 611, 537 A.2d 334 (1988).
[21] Amended Statement of Matters Complained of On Appeal, ¶ 12

10

statute defining that offense are different from the definition of a deadly weapon for purposes of the sentencing guidelines. Under the statute defining the offense of possessing an instrument of crime, such an instrument is something "specially made or specially adapted for criminal use," or something "commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907. A weapon is "[a]nything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses it may have." Id.

Id. Moreover, in the instant case, the jury found beyond a reasonable doubt that the Defendant employed a deadly weapon during the assault. The jury found the Defendant guilty of violating section 2702(a)(4) which requires proof that the Defendant attempted to cause or intentionally or knowingly caused bodily injury to another with a deadly weapon.

For the reasons set forth above, the claims which the Defendant has raised on appeal have been waived and/or lack substantive merit.

BY THE COURT:

2-25-15
Date

DIANE E. GIBBONS, J.

11